SHORTESS, Judge.
S. Don LeBaron and Allison LeBaron, individually and on behalf of their minor children, brought suit to recover for personal injuries that S. Don LeBaron (plaintiff) sustained as a result of an accident which occurred on June 18, 1986, when his car was rear-ended by a truck owned and driven by Walter Underwood. Named defendants were Walter Underwood, Underwood’s liability insurer Allstate Insurance Company, and State Farm Mutual Automobile Insurance Company, plaintiffs under-insured motorist carrier.
During a trial by jury, Underwood and Allstate entered into a settlement for $85,-000.00 with plaintiffs, which was within Allstate’s $100,000.00 liability limits. The trial continued against State Farm. The jury found plaintiff to be 20% at fault and defendant to be 80% at fault, and it also set plaintiff’s damages in a lump sum at $45,-000.00.[1] Since the award was below Allstate’s limits, the trial court rendered judg.ment in favor of State Farm. Plaintiff appeals from this judgment assigning the following specifications of error:
I. The trial court erred in assessing 20% fault to plaintiff where there was no evidence to support that finding.
II. The trial court erred in failing to award damages for the loss of earnings and earning capacity proven by plaintiff.
III. The trial court erred in failing to fairly compensate plaintiff for his past and future medical expenses.
IV.The trial court erred in failing to award even the lowest amount appropriate for general damages to plaintiff for his injuries.
FAULT
The accident occurred on the Essen Lane off-ramp of Interstate 10 East in Baton Rouge. Plaintiff was stopped at the yield sign at the end of the ramp where it intersects with Essen Lane when struck from behind by defendant’s truck. Both plaintiff and defendant testified at trial regarding the accident.
Plaintiff testified that he stopped at the yield sign to allow an oncoming car to pass. Defendant testified that:
I thought that he was going to go on into Essen Lane and I checked back to see if the traffic on Essen had cleared under the overpass and was coming on through to prohibit either he or I from being able to enter into Essen Lane.... The first cars from the traffic light were just appearing under the overpass of Essen Lane. And when I looked back and realized that Mr. LeBaron wasn’t going to go through the yield sign I was a little bit surprised that he didn’t go through ... [and] I realized that I ... had a relatively short distance and time to stop, so I started trying to stop as quickly as I could.
According to defendant, the “relatively short distance ... to stop” equaled two to three car lengths.
On appeal, findings of fact will not be disturbed unless, taking the entire record as a whole, they are clearly wrong. The trier’s finding as to the percentage of fault is factual, and such will not be disturbed on appeal unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The jury’s finding which assessed 20% fault to plaintiff is clearly wrong. The failure of defendant to check whether plaintiff had stopped at the yield sign until *177 he himself was three to four car lengths away from the yield sign constituted the sole, proximate cause of the accident. In light of the fact that defendant admitted that an oncoming car had cleared the overpass a short distance away, plaintiffs decision to come to a complete stop at the yield sign to allow a nearby car to pass did not contribute legally to his injuries. LSA-R.S. 32:81.
QUANTUM
General and specific damages may be awarded in globo and such award will not be set aside absent an abuse of discretion. Sims v. Selvage, 499 So.2d 325 (La.App. 1st Cir.1986). It is only after articulated analysis of the facts discloses an abuse of discretion that the award on appellate review can be considered either excessive or insufficient. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). In order to determine whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Wilson v. Aetna Casualty and Surety Co., 401 So.2d 500 (La.App. 2d Cir.1981). A lump sum judgment is normally presumed to award all items of damages claimed, and the appellant’s burden of proving that the fact finder abused its much discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable. Each case must be determined on its own facts and circumstances, and we must examine each element of damage claimed to determine if there was an abuse of discretion. Valentine v. Wells, 540 So.2d 344, 345-46 (La.App. 1st Cir.1988), writ denied, 546 So.2d 178 (La.1989).
GENERAL DAMAGES
We agree with plaintiff that the award of damages was unreasonably low; however, in order for him to recover from his underinsured motorist carrier, we must find that the lowest total figure a reasonable fact finder could return exceeded the limits afforded by the primary carrier’s (Allstate) $100,000.00 limits. See Reck v. Stevens, 373 So.2d 498 (La.1979).
We find ourselves unable to reach the Allstate limits by examining the inadequacy of pain and suffering, medical expenses (past and future), and past loss of earnings. Even assuming that they are inadequate, we cannot cross the $100,000.00 barrier on these items alone. So, we must analyze the loss of future earnings and future earning capacity items in some detail.
Loss of future earnings is based on lost earning capacity. Such an award is not predicated solely upon the difference between a plaintiff’s earnings before and after the accident. Rather, it encompasses the reduction in a person’s ability to do that for which he may receive recompense. Among the factors to be considered are age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, and the inflation rate. Peterson v. Western World Ins. Co., 536 So.2d 639, 645 (La.App. 1st Cir.1988), writ denied, 541 So.2d 858 (La.1989).
Dr. G. Randolph Rice, an economic expert, testified at trial for plaintiff. Based on the assumption that plaintiff will not be able to generate as much in fees as he did before the accident, because he suffered from a 10% functional disability, Dr. Rice presented to the jury three different ways to calculate plaintiff’s losses, which established a range of loss between $225,000.00 to $750,000.00. However, the physicians who testified stated that plaintiff will only experience a 10% anatomical loss, and not any functional loss. In fact, Dr. Lea went so far as to state that plaintiff will suffer from an occupational irritability and not a true disability.
As a general rule, in order for a plaintiff to obtain an award for impaired earning capacity, he must present medical evidence which at least indicates there could be a residual disability causally related to the accident. Medical evidence that merely indicates there could be discomfort is not enough. Bize v. Boyer, 408 So.2d 1309, 1311, 1312 (La.1982). Also, the jurisprudence requires that the plaintiff prove his loss with reasonable certainty. Although plaintiffs do not have to prove *178 these losses with mathematical certainty, they cannot be based purely on speculation, conjecture, and probabilities. In sum, the plaintiff must present evidence that enables the court to calculate the amount with some certainty. Naman v. Schmidt, 541 So.2d 265 (La.App. 4th Cir.1989).
In this case, any damage award set by the jury would have been pure speculation. The plaintiff presented to the jury three different methods for calculating plaintiff’s losses which lead to widely differing results depending on the method chosen. Furthermore, Dr. Rice’s theories were not supported by the physicians who testified at trial. The failure of plaintiff to present expert testimony to prove that his injuries adversely affected his ability to perform in his chosen profession gives us no choice but to find that the jury’s apparent rejection of this claim was not manifestly erroneous. This is especially true where, as in this case, the jury knew that plaintiff, an attorney, grossed $93,000.00 in the first twelve-month period he was in private practice after the accident, beginning in November 1987, which almost equaled the highest amount he grossed while working for a law firm before the accident.
For the reasons stated, the judgment of the trial court is affirmed at plaintiff’s cost.
AFFIRMED.

. The jury also awarded $15,000.00 to Allison LeBaron and $2,000.00 to each of the minor children for loss of consortium. However, these awards have not been challenged on appeal.